**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Oscar Lee Traynor,<br>      Plaintiff,<br>vs.<br>Workhorse Custom Chassis, Inc.,<br>      Defendant. | No. CV-03-2082-PHX-DGC<br><br>**ORDER** |

Defendant has filed a renewed motion for judgment as a matter of law. Doc. #266. Defendant and Plaintiff have filed memoranda addressing various issues that might arise in the second trial of this case. Docs. ##267-68. Defendant also has filed a motion to exclude the valuation opinions of Plaintiff's expert, William Trimmell. Doc. #270. The Court held a hearing on April 20, 2006, at which these matters were addressed, with the exception of Defendant's most recent motion (Doc. #270). The Court provided some rulings from the bench and on the record, and will provide other rulings in this order.

**I.     Defendant's Renewed Motion For Judgment as a Matter of Law.**

The Court will deny this motion. The Court previously ruled that Plaintiff Oscar Traynor could provide an opinion of the value of his motor home on the date of purchase. Doc. #227 ¶ 11. Mr. Traynor opined during trial that his motor home was not worth more than scrap value on the date it was purchased. Because this evidence, if believed by the jury,

provided a reasonable basis for establishing the fact and amount of damages on the date of purchase, judgment as a matter of law in favor of Defendant was not appropriate.

In considering Defendant's renewed motion, the Court has revisited its ruling on the admissibility of Mr. Traynor's valuation opinion and concludes that its prior order was correct. If believed by the jury, Mr. Traynor's testimony would establish the following: As the owner of the motor home, Mr. Traynor became intimately familiar with its defects. He drove the motor home on three different trips, finding each time that it displayed the wandering complained of in this case. Mr. Traynor took the motor home to LaMesa RV on numerous occasions for repair of the steering defect, but the defect was not repaired. As a result of his inability to obtain a solution to the steering problem, Mr. Traynor was forced to park the motor home in his backyard and not use it for its intended purpose. Because he was unable to use the motor home, it was essentially worthless to him. To Mr. Traynor, the motor home was worth no more than scrap value. On the basis of his prior experience owning motor homes and buying and selling parts, Mr. Traynor testified that the scrap value for the vehicle was approximately $12,000.

The Court concludes that these opinions were admissible under Rule 701 of the Federal Rules of Evidence. The opinions are rationally based on the perception of Mr. Traynor as the owner and driver of the motor home, are helpful to a clear understanding of the motor home's value with the steering defect, and are based on the every-day experience of driving a motor home and attempting to get it repaired at the dealer. *See* Fed. R. Evid. 701(a)-(c). Although some witnesses could testify as to the value of a motor home by engaging in a sophisticated market or financial analysis, Mr. Traynor did not undertake to do so. Rather, his testimony that the vehicle was essentially worthless as a motor home was based on his inability to use it after repeated unsuccessful attempts to have it repaired. Construing the evidence in favor of Plaintiff, the Court concludes that a reasonable jury could accept Mr. Traynor's opinion that the motor home was not usable and therefore was essentially worthless on the date of purchase.

The Court also concludes that Mr. Traynor's opinion would be admissible under Rule

2

702 of the Federal Rules of Evidence. By virtue of his ownership and driving of the motor home, as well as his many repair attempts, Mr. Traynor was qualified to testify about the motor home on the basis of knowledge and experience. His testimony that the vehicle could not be driven safely and therefore was not usable for its sole purpose was based on sufficient facts or data (many efforts to drive the motor home and many efforts to have it repaired, as well as Mr. Traynor's experience as a commercial truck driver), was the product of reliable principles and methods (actual driving of the vehicle and actual attempts to have it repaired) and resulted from Mr. Traynor's application of those principles and methods in a reliable way (Mr. Traynor, as owner of the expensive motor home, had a substantial incentive to drive it and use it, and yet concluded from his experience that he could not do so safely and was therefore forced to park the motor home in his backyard.) *See* Fed. R. Evid. 702(1)-(3). Thus, even if Mr. Traynor's testimony is evaluated under Rule 702, it was admissible at trial.

This is consistent with the rule in numerous cases that the owner of personal property is competent to testify concerning its value. Several of these cases were cited in the Court's previous order. Doc. #227 ¶ 11. Additional cases support this conclusion. *See United States v. Rivers*, 917 F.2d 369, 372 (8th Cir. 1990) ("We agree with the government that in general, the owner of property may testify as to the value of her property."); *United States v. 10,031.98 Acres of Land*, 850 F.2d 634, 639-41 (10th Cir. 1988) (holding that the district court erred in refusing to permit a land owner to testify as to the value of condemned property unless he complied with the standards required of an expert appraiser); *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 698-99 (5th Cir. 1975) (holding that an owner of property was competent to give his opinion on the value of his property under Rule 702); *Town of Paradise Valley v. Laughlin*, 851 P.2d 109, 111 (Ariz. Ct. App. 1993) ("An owner may *always* testify as to the value of his property . . . because 'an owner of property has, by definition, knowledge of the components of value that are useful in ascertaining value, and an owner, no less than an 'expert,' can base his opinion of value on that knowledge.'") (citation and alteration omitted; emphasis in original); *Sarwark Motor Sales, Inc. v. Husband*, 426 P.2d 404, 407 (Ariz. 1967) ("The plaintiff, as the owner, testified as to the difference in

1  value as of the date of purchase if the car had been driven only 22,836 miles as against the
2  same car if it had been driven 86,000 miles. As an owner he was qualified to so testify.").
3  Because the Court concludes that Mr. Traynor's opinions were properly admitted into
4  evidence, the Court finds that there was evidence on which the jury could calculate his
5  damages. Defendant's motion for judgment as a matter of law will be denied.
6  The Court and counsel for Mr. Traynor discussed an additional issue during the
7  hearing on April 20, 2006. The Court noted that Mr. Traynor actually sold the vehicle for
8  approximately $49,000 three years after it was purchased. The Court was concerned that this
9  evidence fundamentally undercut Mr. Traynor's opinion that the vehicle was worth no more
10  than scrap value, and wondered aloud whether it rendered his valuation opinion so unreliable
11  as to be inadmissible. After considering this matter further, the Court has concluded that the
12  subsequent sale does not render Mr. Traynor's opinion inadmissible.
13  The evidence at trial demonstrated that the purchaser of the vehicle, Mr. Dahlgren,
14  was able to cure the steering defect to his satisfaction. He did so by adjusting the steering
15  box and pulling a trailer behind the motor home. A jury reasonably could conclude that
16  Mr. Dahlgren was uniquely situated to fix the motor home and that his purchase price would
17  not necessarily have been paid by a typical motor home user. A jury could further conclude
18  that the actual value of the motor home on the date of sale was the difference between the
19  price actually paid by Mr. Traynor and the scrap value that it was worth in its undriveable
20  condition. This damages number of approximately $74,000 would then have to be reduced
21  by the fact that Mr. Traynor mitigated his damages by finding the uniquely situated
22  Mr. Dahlgren who was willing to pay $49,000 for the vehicle. Thus, the price at which the
23  vehicle was actually sold to Mr. Dahlgren would not necessarily undercut Mr. Traynor's
24  testimony that the vehicle was worth nothing more than scrap value to a typical motor home
25  owner on the date of purchase.
26  The jury could, of course, decide that Mr. Traynor's valuation testimony is not
27  credible and reject it in its entirety. If it did so, the jury might well conclude that Plaintiff
28  had failed to establish the value of the vehicle on the date of sale and had therefore failed to

4

establish his entitlement to damages. In that event, the jury might choose to award no damages to Plaintiff. The point is that Mr. Traynor's testimony presents an issue that must be resolved by the jury. *See Ins. Co. of the State of Pa. v. Smith*, 435 F.2d 1029, 1031 (10th Cir. 1971) ("An owner may testify as to his opinion of the value of property, but his opinion is not conclusive and, as any other fact issue, is subject to the jury's determination. They may consider it together with all other circumstances and facts in the case."). The Court again concludes that Mr. Traynor's testimony is admissible and will therefore deny Defendant's renewed motion for judgment as a matter of law.

**II.     Additional Issues Raised by the Parties.**

In respective memoranda, the parties have raised additional issues for ruling before the second trial in this case. The Court will address some of those issues individually.

**A.     Mr. Trimmell's Valuation Testimony.**

During trial, Plaintiff's counsel asked Plaintiff's expert, Mr. Trimmell, to state an opinion concerning the value of the motor home on the date of sale. Mr. Trimmell was unable to provide such a number, but instead stated that the $28,370 loss calculated as of July 6, 2004, would also apply on the date of sale. He opined that this amount reflected the loss in value due to the motor home's defect, and that the loss amount would have been the same on the date of sale as on the date that he actually valued the vehicle in 2004. While rendering this testimony, defense counsel repeatedly objected that this opinion had never been disclosed. Plaintiff's counsel assured the Court that the opinion had previously been disclosed. As Defendant has raised the issue again with respect to the second trial, the Court asked Plaintiff's counsel to identify the precise document in which the disclosure was made. Because Plaintiff's counsel did not have the document at the hearing, the Court instructed him to fax it to the Court before the close of business on April 21, 2006. The Court specifically directed Plaintiff's counsel to highlight the portion of the document that disclosed this opinion by Mr. Trimmell.

At the close of business on April 21, 2006, Plaintiff's counsel e-mailed to the Court dozens of pages of documents with no highlighting. These included expert disclosures, Rule

5

1 16 disclosures, and the report of Mr. Trimmell, along with pages of attachments. Because
2 Plaintiff's counsel had failed to identify the portion of the document where the opinion was
3 disclosed, the Court was forced to read every page of the submitted documents. In personally
4 reading this extensive submission, the Court found that Mr. Trimmell's opinion concerning
5 the value of the motor home on the date of sale, or concerning the amount of Plaintiff's loss
6 on the date of sale, was never disclosed. The Court is troubled by the representation of
7 Plaintiff's counsel that the disclosure had been made, and equally troubled that Plaintiff's
8 counsel would e-mail dozens of pages of documents for the Court's review without
9 identifying relevant portions and while knowing that the relevant portions did not exist.

10 Because Mr. Trimmell's valuation opinion on the date of sale was not disclosed to
11 Defendant prior to trial, Mr. Trimmell will not be permitted to render such an opinion at the
12 second trial of this case. Because Mr. Trimmell's opinion concerning the value of the vehicle
13 and the amount of loss in 2004 is not relevant to the question of damages on the date of sale,
14 he will not be permitted to render these opinions either. In this respect, the Court notes that
15 the appropriate measure of damages in this case is the amount paid for the vehicle on the date
16 of purchase minus the actual value of the vehicle in its defective condition on that same date.
17 Plaintiff's counsel has agreed with this valuation formula on several occasions, including
18 during the settling of final jury instructions during the first trial. Because Mr. Trimmell's
19 valuation opinions for the vehicle in 2004 do not relate to this issue, the Court concludes that
20 they are not relevant, that they present a risk of jury confusion, and, therefore, that they will
21 not be admitted at trial. *See* Fed. Rs. Evid. 402-03. Mr. Trimmell will not be permitted to
22 give any valuation opinions.

23 **B.     Other Issues.**

24 The Court provided a number of other rulings during the hearing on April 20, 2006.
25 They will be restated briefly.

26 The Court denied Defendant's request that repair orders not covered by Workhorse's
27 warranty be excluded from evidence. The Court finds that these repair orders are relevant
28 to the issue of defect and are not excludable under Rule 403.

1      The Court ruled that Plaintiff and Plaintiff's counsel should not mention Mrs. Traynor's cancer to the jury. This fact is not relevant to any issue in this case. *See* Fed. R. Evid. 402.

       The Court denied Defendant's request that Plaintiff be prohibited from mentioning the amount $126,000 reflected in Plaintiff's purchase documents. The amount is reflected in documents that are clearly relevant to issues in this case, and Defendant is fully capable of helping the jury understand the nature of this amount.

       The Court denied Defendant's request that additional portions of repair orders be placed in evidence. These portions of the repair orders were never identified as exhibits in the Final Pretrial Order.

       The Court agreed that Plaintiff's counsel should not argue to the jury that they are the most powerful people in the community, that corporations cannot be trusted, and that federal statutes have been passed because corporations are untrustworthy.

       The Court modified two of the stipulations previously agreed to by Defendant, finding that a failure to do so would result in manifest injustice because the stipulations were factually incorrect. *See* Fed. R. Civ. P. 16(e).

       Because it was permitting Defendant to reopen the Final Pretrial Order to modify stipulations, the Court also permitted Plaintiff to reopen the Final Pretrial Order to include the issue of allegedly defective air conditioning. Plaintiff will be permitted to present evidence and argument on this issue at the second trial.

**III.    Defendant's Motion to Exclude Valuation Opinions of William Trimmell.**

       Late in the day on April 21, 2006, Defendant filed a motion arguing that Mr. Trimmell's opinions are not admissible under Rule 702. Doc. #270. This motion is untimely and will not be addressed by the Court. As noted above, however, Mr. Trimmell's valuation opinions will be excluded because they were not properly disclosed before trial and otherwise are irrelevant to issues in this case.

       **IT IS ORDERED:**

       1.      Defendant Workhorse Custom Chassis, Inc.'s renewed motion for judgment

7

1  as a matter of law (Doc. #266) is **denied**.

2      2.    Defendant Workhorse Custom Chassis, Inc.'s motion to exclude valuation opinions of William Trimmell (Doc. #270) is **denied**.

    3.    The other rulings set forth in this order shall govern the presentation of evidence and arguments at the second trial of this case, as will any unmodified rulings entered by the Court prior to the first trial.

DATED this 24th day of April, 2006.

_David G. Campbell_
United States District Judge